IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER A. IRELAND,, | ) | |
| | ) | Civil Action No. 10 - 387 |
| Plaintiff, | ) | |
| | ) | District Judge David S. Cercone |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DONNA JO MCDANIEL;  J. RICHARD | ) | |
| NARVIN;  THOMAS N. FARRELL;  JOHN | ) | |
| DOE;  LAURA DITKA;  GREGG | ) | |
| MATTHEWS;  NYKEISHA THOMAS; | ) | |
| ALLEGHENY POLICE DEPARTMENT; | ) | |
| ALLEGHENY COUNTY SALARY | ) | |
| BOARD;  ALLEGHENY COUNTY OFFICE | ) | |
| OF PUBLIC DEFENDER; and | ) | |
| ALLEGHENY COUNTY OFFICE OF | ) | |
| DISTRICT ATTORNEY | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.   RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant McDaniel (ECF No. 31) be granted, that the Motion to Dismiss filed by Thomas Farrell (ECF No. 46) be granted, that the Motion to Dismiss filed by Defendants Allegheny County Police Department, Allegheny County Public Defender's Office, Allegheny County District Attorney's Office, Laura Ditka and Gregg Matthews (ECF No. 52) be granted except as to Plaintiff's malicious prosecution and selective prosecution claims against Defendant Gregg Matthews.  It is further recommended that the Complaint be dismissed with prejudice against Defendant Nykeisha N. Thomas and Public Defender John Doe in accordance with the directives of the Prison Litigation Reform Act under 28

U.S.C. § 1915(e)(2) and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) be denied.

**II.    REPORT**

Plaintiff, Christopher Ireland, an inmate currently confined at the State Correctional Institution at Rockview, located in Bellefonte, Pennsylvania, commenced this action against the following Defendants:  the Honorable Donna Jo McDaniel, the President Judge of the Allegheny County Court of Common Pleas; Laura Ditka, Assistant District Attorney;  J. Richard Narvin, Defense Counsel; John Doe, Assistant Public Defender; Thomas N. Farrell, Defense Counsel; Gregg Mathews, Police Officer; Nykeisha N. Thomas; Allegheny County Police Department; Allegheny County Salary Board; Allegheny County Office of Public Defender; and Allegheny County Office of District Attorney.  In his Complaint, Plaintiff alleges various constitutional violations stemming from a criminal trial which took place in October of 2004.

A. Standards of Review

Presently pending are Defendants' Motions to Dismiss (ECF Nos. 31, 46 and 52).  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court must accept as true all allegations

of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. The authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims in that Act is applicable to this case. Specifically, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 12). Thus his allegations must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B). In reviewing complaints under 28 U.S.C. § 1915(e)(2)(B), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998); Mitchell v. Farcass, 112 F.3d 1483, 1484 (11th Cir. 1997); Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134 (E.D. Va.), *aff'd*, 116 F.3d 473 (Table) (4th Cir. 1997).

## B. Relevant Allegations

On or about December of 1999, Nykiesha N. Thomas signed an agreement that gave Plaintiff custody of their minor child, Chandale N. Thomas (CNT). In the year 2000, a custody hearing was held and Plaintiff was awarded custody of CNT. Sometime thereafter in the year 2000, Thomas filed a complaint with the Georgia Department of Human and Family Services (GDHFS) alleging that Plaintiff sexually molested his 5 year old daughter. GDHFS contacted the Allegheny County Children and Youth Services ( CYS) who contacted the Allegheny County Police Department (ACPD). Subsequently, ACPD Detective Gregg Mathews contacted Thomas to ascertain whether she would be willing to return to Pittsburgh to have CNT testify but Thomas refused.[1]

In the year 2001, Thomas returned to Allegheny County where Plaintiff had constant contact with her and his daughter, CNT. In 2002, Thomas sued Plaintiff for child support. Two weeks later,

---

1. It is unclear from the allegations why Thomas had CNT with her in Georgia when Plaintiff alleges that he was awarded custody of his daughter.

Plaintiff obtained a copy of the 2000 custody order and went to Thomas' home and retrieved his daughter. As a result, Thomas called Detective Matthews and told him that Plaintiff had kidnapped her daughter. Consequently, Detective Gregg Matthews filed a criminal complaint against Plaintiff charging him with Rape, Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, Indecent Assault, Incest, Corruption of Minors and Endangering the Welfare of a Child (EWC). Notably, the complaint alleged that Plaintiff violated the EWC statute "by engaging in sexual activity/intercourse with Jane Doe, a course of conduct of endangering the welfare of a child - 3rd degree felony." ECF No. 45-1, p. 1. Matthews obtained an arrest warrant for Plaintiff who was arrested on January 18, 2003. On February 19, 2003, a preliminary hearing was held where plaintiff was held on all charges relating to the alleged sexual abuse of CNT (ECF No. 63-1, p.1).

Deputy District Attorney Laura Ditka filed the Commonwealth's Bill of Information, which contained only sexually related crimes. At a subsequent pre-trial conference, Assistant Public Defender John Doe agreed to a trial date without having interviewed or contacted Plaintiff. On the first scheduled trial date John Doe informed Plaintiff that he had to postpone the trial because he was not prepared. At that time, Plaintiff addressed Judge McDaniel informing her that he did not wish to waive his speedy trial right and wished to proceed to trial. Thereafter, Judge McDaniel allowed John Doe to waive Plaintiff's speedy trial right. Subsequently, John Doe requested and was granted permission to withdraw from Plaintiff's case.

Sometime in 2003, Judge McDaniel appointed Richard Narvin as Plaintiff's defense counsel. After numerous postponements on or about October 18, 2004 a trial commenced, where Ditka, in her opening statement informed the jury that the Commonwealth's case was about Plaintiff sexually abusing his 5 year old daughter. Notwithstanding, during cross examination of Plaintiff, Ditka

questioned Plaintiff exclusively about paying child support. Narvin failed to object to this line of questioning. During her closing, Ditka spoke exclusively to the jury concerning Plaintiff's failure to pay child support. Afterward, Judge McDaniel only instructed the jury as to the felony Endangering the Welfare of Children, 18 Pa. Cons. Stat § 4304 (b) "Course of conduct" but did not instruct the jury as to the prosecution's theory of liability as argued during the trial, which is graded only as a Third Degree Misdemeanor. Narvin did not object to the court's charge, nor did he submit any proposed jury instructions. On or about October 21, 2004, the jury acquitted Plaintiff of all of the sex based crimes but found Plaintiff guilty of 18 Pa. Cons. Stat. § 4304 (EWC) for failure to pay child support, a crime not charged by the Commonwealth's Bill of Information.

On January 5, 2005 Ditka appeared at Plaintiff's sentencing and argued for the maximum sentence allowed for a felony in the third degree. In addition, Thomas presented a victim impact statement to McDaniel stating that her daughter had nightmares about what Plaintiff did to her. Judge McDaniel then sentenced Plaintiff to two and one-half (2 ½) to seven 7 years incarceration for the felony conviction of 18 Pa. Cons. Stat. 4304(b) course of conduct - engaging in sexual activity.

In early February of 2005, Judge McDaniel appointed Thomas N. Farrell to represent Plaintiff on direct appeal to the Superior Court of Pennsylvania. On May 27, 2007, the Superior Court remanded the case for re-sentencing finding that the trial court had illegally sentenced Plaintiff to a felony when the case concerned only a third degree misdemeanor as argued. The Superior Court further ordered that the scope of the remand was to include Plaintiff's ineffective assistance of counsel claims. On January 22, 2008, a hearing was held before Judge McDaniel where she dismissed the charges against Plaintiff.

Plaintiff's Complaint is dated January 21, 2010. He sets forth the following as his claims for relief.

First count: 42 U.S.C. § 1983 - abuse of process and malicious prosecution: Nykeisha Thomas did conspire to deprive plaintiff of custody of his minor child and commence state criminal process with and/or without probable cause.

Second count: 42 U.S.C. § 1983 - abuse of process and malicious prosecution: Gregg Matthews did conspire to deprive plaintiff of custody of his minor child and did while acting in concert commence state criminal process with and/or without probable cause.

Third count: 42 U.S.C. §§ 1981, 1983, 1985, and 1986 - Defendants McDaniel, Ditka and Narvin did conspire to convict, sentence, and wrongfully incarcerate plaintiff for failing to pay child support and did deny plaintiff equal protection of the law.

Fourth count: 42 U.S.C. § 1983: Public defender John Doe conspired with McDaniel and Ditka to violate Defendant's speedy trial rights.

Fifth count: 42 U.S.C. §§ 1981, 1983, 1985, and 1986 - Defendant Mcdaniel did conspire with Ditka and Narvin to sentence and incarcerate plaintiff illegally.

Sixth count: 42 U.S.C. §§ 1981, 1983, 1985, and 1986 - Defendant Ditka while acting in the absence of prosecutorial authority did conspire with McDaniel and Narvin to sentence and incarcerate Plaintiff illegally.

Seventh count: 42 U.S.C. §§ 1981, 1983, 1985, and 1986 - Defendant Farrell did conspire and/or agree with McDaniel in exercising her invidiously sexist and racially discriminatory animus to keep Plaintiff illegally incarcerated by failing to appeal the issue of plaintiff being convicted of failing to pay child support; failing to file an immediate petition for bond; failing to take any steps

and/or measures to secure the opinion required for appellate review; failing to obtain plaintiff's release on bond.

Eighth count: 42 U.S.C. § 1983 - the Allegheny County Public Defenders Office has a long standing custom of failing to create a neutral agency to appoint counsel to indigent criminal defendants.

Ninth count: 42 U.S.C. § 1983 - denial of effective assistance of counsel.

Tenth count: 42 U.S.C. § 1983: the Office of the Allegheny County District Attorney failed to supervise, train, and/or discipline deputy district attorney Ditka with respect to varying, amending, and changing charges to secure convictions for non-criminal charges or matters.

Eleventh count: 42 U.S.C. § 1983 - the Allegheny County Office of the Public Defender failed to supervise, train, and/or discipline assistant public defender John Doe with respect to the waiver of criminal defendant's constitutional rights.

Count Twelve: 42 U.S.C. § 1983 - The Allegheny County Police Department and/or the District Attorney's Office failed to train detective Gregg Matthews with respect to probable cause to arrest in alleged sex abuse cases where the basis of the allegation is full vaginal penetration of a five year old child with no physical or medical exam, or proof.

Count Thirteen 42. U.S.C. § 1983 - The Allegheny County Salary Board has a long standing custom of failing to create a neutral agency to appoint counsel to indigent criminal defendants that had a conflict with the attorney's employed by the office of public defender

## C. Limitations Periods

Plaintiff alleges that Defendants violated his civil rights when he was wrongfully arrested, jailed without proper cause and subsequently prosecuted by Defendants for a felony when only a

misdemeanor crime was argued during trial. He seeks recovery against Defendants under the following federal statutes: 42 U.S.C. §§ 1981, 1983, 1985, and 1986. With the exception of 42 U.S.C. § 1986, these statutes do not contain a specific federal statute of limitations period for filing civil rights actions thereunder. Instead, the limitations period for civil actions brought under statutes 42 U.S.C. §§ 1981, 1983, and 1985 are determined by state law.[2] Such actions are classified as personal injury claims for the purpose of determining the limitations period under the applicable state law. Wilson v. Garcia, 471 U.S. 261, 272-76 (1985). The limitations period for personal injury actions under Pennsylvania law is two years. 42 Pa. Cons. Stat. Ann. § 5524. Thus, under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. §§ 1981, 1983 and 1985 is two years.[3] Actions under 42 U.S.C.§ 1986, however, are required to be filed within one year after the cause of action has accrued. *See* 42 U.S.C. § 1986.

In Pennsylvania, the limitations period begins to run from the time the plaintiff suffers the injury or has reason to know of the injury. Morgan v. Johns-Manville Corp., 354 Pa. Super. 58, 61-62, 511 A.2d 184, 186, *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1986). Federal law, however, governs the date of accrual for claims brought under § 1983. Gibson v. Superintendent of New Jersey Dept. of Law and Public Safety, 411 F.3d 427, 435 (3d Cir. 2005), *cert. denied*, 547 U.S. 1035 (2006). Under federal law, much like in Pennsylvania, the limitations period begins to run

---

2. *See* Goodman v. Lukens Steel Correctional Officer., 482 U.S. 656, 662 (1987) (42 U.S.C. § 1981); Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42 U.S.C. § 1983); Bougher v. University of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989) (42 U.S.C. § 1985).

3. It is undisputed that in Pennsylvania, 42 Pa. Cons. Stat. § 5524(1), (2), & (7) govern personal injury claims for false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress, malicious prosecution and abuse of process and provide that such actions must be commenced within two years.

from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. <u>Gibson</u>, 411 F.3d at 435 (quoting <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998). *See also* <u>Wallace v. Kato</u>, 549 U.S. 384, 390 (2007) ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action ... that is, when the plaintiff can file suit and obtain relief") (internal quotations and citations omitted).

To the extent that Plaintiff is raising claims for false arrest and false imprisonment, such claims began to accrue when he appeared before the examining magistrate and was bound over for trial. *See* <u>Wallace v. Kato</u>, 549 U.S. 384, 390 (2007). Because more than two years elapsed between that date (January of 2003) and the filing of this suit (January 21, 2010) any such action for false arrest and false imprisonment is time barred. *Id*.

Plaintiff also makes claims of abuse of process. An abuse of process occurs when a party employs legal process against another primarily to accomplish a purpose for which it was not designed. <u>Gen. Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297, 307 (3d Cir. 2003). "In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" <u>Rose v. Bartle</u>, 871 F.2d 331, 350 n. 17 (3d Cir. 1989) (quoting <u>Jennings v. Shuman</u>, 567 F.2d 1213, 1217 (3d Cir. 1977)). Pennsylvania recognizes a cause of action for abuse of process where the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. <u>Rosen v. Am. Bank of Rolla</u>, 426 Pa. Super. 376, 627 A.2d 190, 192 (1993). " '[T]here is no action for abuse of process when the process is used for the purpose for which it is

intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.' " *Id.* (quoting Restatement (Second) of Torts § 682 cmt.b (1977)).

Here, Plaintiff has alleged that Defendants used a legal process against him when they initiated criminal charges against him. The fact that Defendants then carried out the process by continuing to prosecute Plaintiff, even if with bad intentions or an ulterior purpose, does not, constitute a subsequent perversion of the process or transform Plaintiff's claim for malicious prosecution into one for abuse of process. *Accord* Napier v. City of New Castle, Civil No. 09-2056, 2010 WL 4243893 (3d Cir. Oct. 28, 2010). Notwithstanding, to the extent that Plaintiff raises an abuse of process claim, it accrued, at the very latest, on the date that he was sentenced on a charge for which he was not indicted on. Because more than two years elapsed between that date (January 5, 2005) and the filing of this suit (January 21, 2010) any such action for abuse of process claim is time barred.

Plaintiff also seems to be making a selective-enforcement claim, *i.e.,* that he was targeted for enforcement because he is a black male. To make out an selective enforcement claim, a plaintiff must demonstrate: 1) that he was treated differently from other similarly situated individuals; and 2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir.1993)). A Fourteenth Amendment selective-enforcement claim accrues at the time that the wrongful act resulting in damages occurs. Dique v. New Jersey State Police, 603 F.3d 181, 188 (3d Cir. 2010). In the case at bar, the alleged damage, targeting Plaintiff for enforcement, occurred when

he was arrested on January 18, 2003. Because more than two years elapsed between that date and the filing of this suit any such action for selective enforcement is time barred.

In addition, Plaintiff's Complaint may be fairly read to assert a selective-prosecution claim. To make out a selective-prosecution claim, a plaintiff first must provide evidence that persons similarly situated have not been prosecuted. Second, they must show that the decisions were made on the basis of an unjustifiable standard such as race, religion, or other arbitrary classification or to prevent the defendant's exercise of a fundamental right. Government of Virgin Islands v. Harrington, 791 F.2d 34, 36 (3d Cir. 1986). An individual's Equal Protection claim that law enforcement personnel engaged in racially selective prosecution practices does not begin to run until his conviction had been vacated. Gibson v. Superintendent, N.J. Dep't of Law and Public Safety, 411 F.3d 427, 440-441 (3d Cir. 2005). Plaintiff 's charges were dropped on January 22, 2008. His Complaint is dated January 21, 2010. Accordingly, his claim of selective prosecution is timely and will be discussed below.

Plaintiff further makes claims of malicious prosecution. To prove malicious prosecution, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003). *See also* DiFronzo v. Chiovero, 2011 WL 94545, 2 (3d Cir. 2011). The statute of limitations on malicious prosecution claims does not begin to run until the underlying criminal proceedings are terminated in plaintiff's favor. Crawford v. Miller, 269 Fed. App'x 178, 180 (3d Cir. 2008) (citing Rose v.

13

<u>Bartle</u>, 871 F.2d 331, 348 (3d Cir. 1989)). As stated above, Plaintiff filed his action within two years of the date the charges were dropped against him. Thus, his malicious prosecution claims are timely.

In Counts ten, twelve and thirteen, Plaintiff asserts claims under 42 U.S.C. § 1983 against various Allegheny County agencies. Specifically, in Count Ten he claims that the Allegheny County District Attorneys Office failed to supervise, train, and/or discipline Ditka with respect to varying, amending, and changing charges to secure convictions for non-criminal charges. In Count Twelve, he claims that the Allegheny County Police Department and/or the District Attorney's Office failed to train detective Gregg Matthews with respect to probable cause to arrest in alleged sex abuse cases where the basis of the allegation is full vaginal penetration of a five year old child with no physical or medical exam, or proof and in Count Thirteen, he claims that the Allegheny County Salary Board failed to create a neutral agency to appoint counsel to indigent criminal defendants. All of these claims are barred by the two-year limitations period. As to all of these counts, Plaintiff had reason to know of these claims, at the absolute latest, on the date of his sentencing, January 5, 2005. Because this date occurred more than two years before he filed his Complaint, Counts Ten, Twelve, and Thirteen are time barred.

## D. <u>Judicial Immunity</u>

In this action, plaintiff is seeking to impose liability against the President Judge of the Court of Common Pleas of Allegheny County, Pennsylvania, the Honorable Donna Jo McDaniel. In a limited number of circumstances, government officials are entitled to absolute immunity from a suit for damages. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993). The grant of absolute immunity from suit has been used "quite sparing," and is confined to official functions in which the exposure

to liability would invariably impede the official in the performance of his or her duties. Forrester v. White, 484 U.S. 219, 223-24 (1988).

Judges generally are accorded absolute immunity from the award of money damages for the performance of "truly judicial acts" that are performed within their lawful jurisdiction. Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219, 223-24 (1988). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, Mireles, 502 U.S. at 11-12, or are taken as a result of a conspiracy with others. Dennis v. Sparks, 449 U.S. 24, 27 (1980). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Mireles, 502 U.S. at 9 (quotation omitted).

It is only when a judge has acted in the "clear absence of all jurisdiction" will he be deprived of his absolute immunity. Stump v. Sparkman, 435 U.S. 349, 356 (1978). However, judicial acts taken "in excess" of a judge's subject matter jurisdiction are protected by judicial immunity, even when they are alleged to have been done maliciously or corruptly. Stump, 435 U.S. at 356, n.7 (citing Bradley v. Fisher, 80 U.S. 335, 351-52 (1871)). In Stump, the Supreme Court explained the distinction between lack of subject matter jurisdiction and excess of jurisdiction as follows. A probate judge, having jurisdiction over only wills and estates, would be acting in the clear absence of his jurisdiction should he try a criminal case and, as a result, he would not be immune from liability for his actions. Id. However, a criminal court judge who uses his judicial authority to

convict a defendant of a nonexistent crime is merely acting "in excess" of his jurisdiction and, therefore, would be immune. *Id*.

Here, Plaintiff alleges that Defendant McDaniel used her judicial authority to convict him of a crime not alleged in the indictment. As such, President Judge McDaniel is entitled to absolute immunity from damages for this action. Consequently, her motion to dismiss should be granted.

### E. Prosecutorial Immunity

As judges are accorded absolute immunity in the performance of "truly judicial acts" performed within their lawful jurisdiction, certain other specified officials, such as administrative law judges, and federal and state prosecutors, enjoy absolute immunity in the performance of functions that are "closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). Absolute immunity shields not only these decision makers, but also other individuals who perform discretionary tasks that play an integral part in the decision making process. *Id*. Thus, where the official's responsibilities are closely analogous to the adjudicative functions of a judge, or are intimately associated with the judicial process itself, that official may enjoy absolute immunity from suit for actions taken to fulfill those particular responsibilities. Buckley v. Fitzsimmons, 509 U.S. at 271.

Prosecutors are subject to varying levels of official immunity. It is well established that a state prosecuting attorney is absolutely immune from liability under 42 U.S.C. Section 1983 for his or her actions that are related to the initiation and prosecution of a criminal action. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). *See also* Burns v. Reed, 500 U.S. 478 (1991). The immunity extends to responsibilities discharged in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases"

of litigation. "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of prosecution and actions apart from the courtroom." Imbler, 424 U.S. at 431 n. 33.

Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity. Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981). *See also* Rose v. Bartle, 871 F.2d at 343. Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir.1980). The decision to initiate a prosecution is at the core of a prosecutor's judicial role. Imbler, 424 U.S. at 430-31. In that regard, a prosecution in protected by the doctrine of absolute immunity, even where he acts without a good faith belief that any wrongdoing has occurred. Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989). *See also* Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 3d Cir. 1997) (caseworkers were entitled to absolute immunity for their actions discharged on behalf of state in preparing for, initiating, and prosecuting dependency proceedings); Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (even groundless charges are protected by absolute immunity in the interest of maintaining the vigorous prosecution of the crime). Thus, it is well settled that prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role. *See* Rose; Imbler; Ross.

The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well. *See, e.g.*, Savage v. Bonavitacola, Civil No. 03-0016, 2005 WL 568045 (E.D. Pa. March 29, 2005) (plaintiff's allegation that the district attorney and all of the other defendants acted in concert and

conspired to deprive him of his federal constitutional rights was dismissed as a result of absolute prosecutorial immunity); Hull v. Mallon, Civil No. 00-5698, 2001 WL 964115 (E.D. Pa. August 21, 2001) ("When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded ..."); Flowers v. Marino, Civil No. 93-1212, 1993 U.S. Dist. LEXIS 12038, at *6-7 (E.D. Pa. August 25, 1993) ("Allegations that the district attorney and assistant district attorney conspired with others and that the wrongs [to plaintiff] were racially motivated, do not strip the prosecuting attorneys of their absolute immunity from civil damage claims," where the conduct complained of is "intimately associated with the judicial phase of the criminal process"); Barnes v. City of Coatesville, Civil No. 93-1444, 1993 WL 259329, at *8 (E.D. Pa. June 28, 1993) ("[Plaintiff's] allegation of conspiracy does not affect [the assistant district attorney's] entitlement to immunity .... [The assistant district attorney is] absolutely immune from liability for the Section 1983, 1985, 1986 and 1988 claims for malicious prosecution.").

The Court finds that the acts that the Plaintiff alleges fall within the district attorney's prosecutorial function. Put simply, all of the alleged wrongful acts cited by Plaintiff concern the decision to prosecute and the handling of Plaintiff's prosecution once that decision was made. Accordingly, even if Plaintiff's allegations are true, Ditka is immune from liability for her actions. As a result, her motion to dismiss should be granted. *Accord* Richards v. Pennsylvania, 196 Fed. App'x 82 (3d Cir. 2006) (holding that absolute immunity barred arrestee's civil rights claims against district attorney for, *inter alia*, malicious and selective prosecution). *See also* Jones v. Middletown

Tp., 253 Fed. App'x 184 (3d Cir. 2007) (holding that absolute immunity applied to preclude imposition of liability on a malicious prosecution claim).[4]

The remaining district attorney Defendant is the Allegheny County District Attorneys Office (ACDA). In Count Ten, Plaintiff he alleges that the ACDA failed to supervise, train, and/or discipline deputy district attorney Ditka with respect to varying, amending, and changing charges to secure convictions for non-criminal charges or matters. In Count Twelve, he claims that the ACDA failed to train detective Gregg Matthews with respect to probable cause to arrest in alleged sex abuse cases where the basis of the allegation is full vaginal penetration of a five year old child with no physical or medical exam, or proof. To the extent that these claims are not barred by the applicable limitations period, Plaintiff has failed to state a claim upon which relief may be granted.

In this regard, the ACDA (as well as the Allegheny County Police Department, the Allegheny County Office of the Public Defender and the Allegheny County Salary Board) are part of Allegheny County; they have no separate existence. Thus, Plaintiff's claim is construed as asserting liability against Allegheny County. Local governing bodies are deemed to be "persons" within the meaning of section 1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. Monell v. Department of Social Services, 436 U.S. 658 (1978). To establish municipal liability plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of his injury. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A municipality is liable "where the municipality itself causes the constitutional

---

4. Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) seeks judgment against Ditka for her actions in prosecuting him for a charge not alleged in the Indictment. Because Ditka is immune from liability for such actions, his Motion for Partial Summary Judgment should be denied.

violation at issue." Canton v. Harris, 489 U.S. 378, 385 (1989). To establish causation plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. Id. 915 F.2d at 850. A municipality is not liable for the alleged misconduct of its employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of respondeat superior. Monell, 436 U.S. at 691.

Here, Plaintiff has not set forth any allegations to establish liability against Allegheny County on the basis of its failure to properly train or supervise. As with other § 1983 claims, to establish liability for a "failure to train" claim, a plaintiff need not prove a municipality has a formal policy of not training its employees. See City of Canton v. Harris, 489 U.S. 378, 390 (1989) ("It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees."). A municipality with a constitutional policy could nonetheless be liable on a failure to train claim. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need ." Id. Nonetheless, an allegation of "failure to train" can be the basis for liability under § 1983 only in limited circumstances. Id. at 387. "City of Canton teaches that municipal liability for failure to train cannot be predicated solely on a showing that the City's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1029-30 (3d Cir. 1991). To maintain a failure to train claim, a plaintiff must allege that the failure amounts to deliberate indifference to the constitutional

rights of the person with whom the municipal agents come in contact. *See id.* at 1028. In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." City of Canton, 489 U.S. at 388. In addition, the identified training deficiency must be closely related to the ultimate constitutional injury. *Id.* at 391; Colburn, 946 F.2d at 1030.

Thus, to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390)). In the case at bar, however, Plaintiff has not identified any specific training, supervision or disciplinary actions that were deficient. Nor has he established that training, supervision and/or discipline were not provided by the ACDA as needed. Moreover, he fails to make any specific factual allegations that Allegheny County is liable based on a policy or custom of tolerating prosecutorial abuse. Finally, he fails to allege that any similar conduct has occurred in the past such that Allegheny County should have been aware that an unreasonable risk of harm existed. *See* Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries."). Accordingly, Plaintiff's claim against the ACDA, construed as a claim against Allegheny County, should be dismissed for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983. *Accord* Patterson v. City of Philadelphia, Civil No.

08-2140, 2009 WL 1259968, at *12 (E.D. Pa. May 01, 2009) (dismissing Plaintiff's failure to train claim against District Attorney).

### F. Liability under 42 U.S.C. § 1983

Plaintiff seeks to impose liability against Defendants under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must meet two threshold requirements: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). A person raising a civil rights claim for damages under section 1983 first must demonstrate that the defendant is a person acting under color of state law, *i.e.*, a state actor. If the record does not reflect that the defendant acted under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk County v. Dodson, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

Notwithstanding the foregoing, a private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. West v. Atkins, 487 U.S. 42, 54 (1988). The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) (action against private parties accused of conspiring with judge found to be state action under Section 1983). However, allegations must be particularly specific where conspiracy is alleged so that purely private action may not be converted into state action merely by

inclusion of a state official as a defendant in the action.  Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir.

1985).  In particular, Plaintiff must make specific factual allegations of combination, agreement or

understanding among the alleged co-conspirators to plot, plan or conspire an alleged chain of events.

Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).

A.    Color of Law

In Count One, Plaintiff seeks to hold the mother of his daughter, Nykeisha Thomas, liable

for abuse of process and malicious prosecution under 42 U.S.C. § 1983.  While the abuse of process

claim is time-barred, Plaintiff can not impose liability against Defendant Thomas under section 1983

because she is not a state actor and, therefore, can not act under color of state law for purposes of

imposing liability under section 1983.

In Count Four, Plaintiff seeks to impose liability against  Public defender John Doe.  In

Counts Three and Five, Plaintiff seeks to impose liability against his defense attorney, Narvin.  In

Count Seven, he seeks to impose liability against his appellate counsel, Thomas Farrell.  In Counts

Eight and Eleven, he seeks to impose liability against the Allegheny County Office of Public

Defender and in Count Nine he makes a claim of ineffective assistance of counsel.  A criminal

attorney is not a "state actor" for purposes of a section 1983 claim, regardless of whether the attorney

is a private attorney or a public defender.  Appointed counsel in a state criminal prosecution, though

paid and ultimately supervised by the State, does not act "under color of state law" for purposes of

liability under 42 U.S.C. § 1983 for acts taken in the normal course of conducting a defense.  Black

v. Bayer, 672 F.2d 309 (3d Cir.), *cert. denied*, Stoica v. Stewart, 459 U.S. 916 (1982); Henderson

v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980).  Moreover, a public defender does not act under color

of state law for purposes of section 1983 liability when performing the traditional role of counsel for

a criminal defendant. Polk County v. Dodson, 454 U.S. 312, 315 (1981). A public defender, although paid by the state, exercises "independent judgement on behalf of his client." *Id*. at 321. Because the function of a public defender is to represent his client in a manner that conflicts with state interests, the Court concluded that a public defender could not be a state actor when acting as an advocate for his client. *Id*. at 324. Thus, Plaintiff cannot impose liability against his attorneys or the Office of the Public Defender for any of his claims that are not otherwise barred under the applicable limitations period. *See* Nelson v. Rapp, 381 Fed. App'x 125, 126 (3d Cir. 2010).

Notwithstanding, public defenders and appointed attorneys may be liable as state actors under section 1983 where they conspire with state officials to deprive a plaintiff of his constitutional rights. Tower v. Glover, 467 U.S. 914, 920 (1984). In light of this, Plaintiff attempts to impose liability against his defense attorneys (and everyone else for that matter) by making conclusory allegations of conspiracy.

To demonstrate a conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). A plaintiff must allege conspiracy with particularity even though a heightened pleading standard does not apply to civil rights actions against individual defendants. Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). *See*

*also* Loftus v. Southeastern Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under [Fed. R. Civ. Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

In the instant action, plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by Defendants to achieve a conspiracy. Absent allegations showing any agreement to deny plaintiff's rights, he has failed to allege a claim of a conspiracy. *Accord* Mincy v. Klem, 2009 WL 331432, *5 (M.D. Pa. 2009); Ebersole v. Pennsylvania Dept. of Corrections, 2009 WL 1010521, *3 (M.D. Pa. 2009). Accordingly, Plaintiff's conspiracy claims are insufficient to impose liability against the defense attorney Defendants.[5]

As is evident from the discussion above, only Plaintiff's malicious and selective prosecution claims are timely brought in this action. Moreover, the only proper Defendant for such claims is Officer Gregg Matthews. Thus, only Plaintiff's malicious prosecution and selective prosecution claims against Defendant Matthews survive the motions to dismiss.

## III.   **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendant McDaniel (ECF No. 31) be granted, that the Motion to Dismiss filed by Thomas Farrell (ECF No. 46) be granted, that the Motion to Dismiss filed by Defendants Allegheny County Police Department, Allegheny County Public Defender's Office, Allegheny County District

---

5.   *Accord* Bieros, 860 F. Supp. at 223 (complaint alleging conspiracy dismissed for failure to state a claim); Flanagan v. Shively, 783 F. Supp. 922, 928-29 (M.D. Pa.) (motion to dismiss granted because allegations were insufficient and conclusory), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993). *See also* Green v. City of Paterson, 971 F. Supp. 891 (D.N.J. 1997) (allegations failed to establish any factual basis for an agreement to deprive plaintiff of his constitutional rights).

Attorney's Office, Laura Ditka and Gregg Matthews (ECF No. 52) be granted except as to Plaintiff's malicious prosecution and selective prosecution claims against Defendant Gregg Matthews.  It is further recommended that the Complaint be dismissed with prejudice against Defendant Nykeisha N. Thomas and Public Defender John Doe in accordance with the directives of the Prison Litigation Reform Act under 28 U.S.C. § 1915(e)(2) and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 62) be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2

Dated: January 26, 2010

_____
Lisa Pupo Lenihan
United States Magistrate Judge, Chief

cc:     Christopher A. Ireland
        HW - 8508
        S.C.I. Rockview
        Box A
        Bellefonte, PA  16823-0820